IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANNEMARIE BABCOCK,

        Plaintiff,

   v.

ALBERTSONS', INC.,

        Defendant.

Civil No. 04-3071-CO

FINDINGS AND RECOMMENDATION

COONEY, Magistrate Judge:

    Plaintiff brought this action against her former employee in state court. Defendant removed this suit pursuant to 28 U.S.C. §§1332 and 1441 based upon diversity jurisdiction. Plaintiff alleged claims under the Oregon Family Leave Act, ORS 659A.171 and ORS 659A.183 and the Oregon Employment Practices Act, ORS 659A.133 and ORS 659A.136, as well as a claim for invasion of privacy by public disclosure, and a claim for intentional infliction of emotional distress. Defendant moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's claims under ORS 659A.183, 659A.133, and 659A.136 for failure to state

a claim (#4). A Findings and Recommendation was issued recommending dismissal of these claims (#22), which was adopted by Judge Hogan and these claims were dismissed (#26).

Defendant filed a motion for summary judgment (#53), which was held in abeyance until resolution of plaintiff's motion to amend (#43) and motion to reopen discovery(#45). Both plaintiff's motion were denied. (#75 and #81). Plaintiff's response to defendant's motion for summary judgment was due August 22, 2005 (#83). Plaintiff has not filed a response or moved for an extension of time to file a response.

## I. **FACTS**

The following facts were submitted by defendant and are deemed admitted under the local rules.

1. Plaintiff was rehired as a Pharmacy Technician on May 16, 1999. (Plaintiff's Depo. at 15). As part of her rehire, plaintiff acknowledged receiving a copy of the Company's personnel policies that included a policy requiring her to call in advance if she would be absent or late to work. (Haddad Aff. Exhibit A).

2. On January 3, 2003, plaintiff overdosed on prescription drugs in an attempt to commit suicide. (Plaintiff's Depo. at 51).

3. On January 4, 2003, plaintiff's husband approached Pharmacy Manager Leslie Boersma at the pharmacy customer pick-up window and said that plaintiff "tried to buy the farm", alluding to plaintiff's suicide attempt. He also said that Ms. Babcock would not be in to work until released by her doctor. At no time did Mr. Babcock state or request that the information regarding Ms. Babcock's suicide attempt be held in confidence. (Boersma Decl. ¶9; Hansen Decl. ¶4).

4. Pharmacy Technician Catherine Hansen was present at the pharmacy customer pick-up window when plaintiff's husband made this statement, and she overheard plaintiff's husband make this statement. (Boersma Decl. ¶9; Hansen Decl. ¶4).

5. In addition to Ms. Boersma, the Company employed one other Pharmacist at this location, Donna Ketler. (Boersma (Decl. ¶2). Ms. Ketler acted as the de facto manager of the pharmacy in Ms. Boersma's absence and was responsible for supervising and for the actions of the Pharmacy Technicians. (Boersma Decl. ¶3).

6. As one who would be working as the de facto manager and supervisor of plaintiff, Ms. Ketler has a reason to know of plaintiff's suicide attempt using prescription drugs. (Boersma Decl. ¶14).

7. Ms. Boersma advised Ms. Ketler of plaintiff's suicide attempt when Ms. Ketler was in the store shopping. (Boersma Decl. ¶15). Ms. Boersma escorted Ms. Ketler to an isolated part of the pharmacy in order to talk to Ms. Ketler. (Boersma Decl. ¶15). Catherine Hansen was present when Ms. Boersma told Ms. Ketler of plaintiff's suicide attempt. (Hansen Decl. ¶8). Ms. Hansen already was aware of the suicide attempt as she also had been present when Mr. Babcock made his statement to Ms. Boersma. (Boersma Decl. ¶15; Hansen Decl. ¶8). Ms. Boersma had no conversations with anyone outside of Albertson's management regarding plaintiff's suicide attempt. (Boersma Decl. ¶16).

8. Ms. Boersma informed her Store Director Robon Evans of plaintiff's suicide attempt. (Boersma Decl. ¶12). She also sought guidance from regional Pharmacy Manager Paul Wachter regarding whether she should

3 - FINDINGS AND RECOMMENDATION

inform Ms. Ketler of plaintiff's suicide attempt. (Boersma Decl. ¶12; Wachter Decl. ¶2). Mr. Wachter told Ms. Boersma that she may inform Ms. Ketler of plaintiff's suicide attempt and that Ms. Ketler should know about the suicide attempt, because of her supervisory responsibilities as the staff pharmacist.

9. Because of the seriousness of plaintiff's attempted suicide and her overdoes on prescription medication, the Company was concerned that plaintiff might be a threat to herself or to others by virtue of her access to prescription drugs and controlled substances. (Maya Aff. ¶4). Further, the Company was concerned about potential liability should plaintiff come to work after abusing prescription drugs or a controlled substance and make a mistake in filling a customer's prescription. (Boersma Decl. ¶11).

10. The Company required plaintiff to present a physician's certification to return to work with assurances that plaintiff was not a direct threat to herself or to others. (Maya Aff. ¶7). This was consistent with a uniformly applied company procedure regarding an employee's return to work from leave. (Maya Aff. ¶7).

11. On January 6, 2003, plaintiff presented Ms. Boersma with a note signed by Physician's Assistant, Roger Cummins. (Boersma Decl. ¶10). The note did not address whether plaintiff was a direct threat to herself or others. It merely stated that plaintiff was "ok" to return on January 9, 2003. (Maya Aff. Exhibit A).

12. On January 7, 2003, Company representative Kip Stover wrote to plaintiff's physician Charles Bury asking him to confirm the Physician Assistant's assessment and release to return to work on January 9,

4 - FINDINGS AND RECOMMENDATION

2003. (Maya Aff. Exhibit B). Mr. Stover asked Dr. Bury to confirm that plaintiff was not a direct threat to herself or to others as a result of her use of prescription medications in her suicide attempt. (Maya Aff. Exhibit B).

13. On January 8, 2003, Physician Assistant Cummins replied to Mr. Stover's letter to Dr. Bury, writing that he stood by his decision to release plaintiff to work effective January, 9, 2003. (Maya Aff. Exhibit C). Mr. Cummins also wrote, " As for potential harm to herself or to others I ask you this question; Has Anne Marie had any incident at or around work that you should be concerned about? What guarantee do we have from any person we come in contact with of no harm, and can we protect anyone from themselves?" He did not state whether plaintiff presented a risk of harm to others if she returned to work. (Maya Aff. Exhibit C).

14. The Company received no response from Dr. Bury to Mr. Stover's January 7, 2003 letter. No one confirmed that plaintiff was not a direct threat to herself or others. (Maya Aff. Exhibit C).

15. On January 10, 2003, Dr. Bury signed a copy of Mr. Cummins' January 8, 2003 letter. (Maya Aff. ¶8). Dr. Bury did not confirm whether or not plaintiff was a direct threat to herself or others. (Maya Aff. ¶¶8-9).

16. On January 13, 2003, Company Labor Relations Director Victor Maya wrote to Dr. Bury asking him to confirm whether plaintiff presented a significant risk of substantial harm to others. (Maya Aff. Exhibit D).

17. On January 16, 2003, in response to a telephone call from Mr. Maya, a staff member assisting Dr. Bury wrote to Mr. Maya and requested that he re-fax his letter of January 14, 2003, because part of the original faxed attempt was illegible due to a new fax machine being used by Dr. Bury's office. (Maya Aff. ¶10).

18. On January 24, 2003, after not receiving a response to the fax sent on January 16, 2003, the Company asked Dr. Bury again to confirm whether plaintiff posed a potential threat of harm to others. (Maya Aff. Exhibit F).

19. On January 27, 2003, Dr. Bury faxed the Company a certification that plaintiff was able to return to work. (Maya Aff. Exhibit G). For the first time, Dr. Bury wrote that plaintiff was not a direct threat to herself or others. (Maya Aff. ¶13). Dr. Bury also confirmed that plaintiff overdosed on drugs that were prescribed to plaintiff and her husband. (Maya Aff. Exhibit G).

20. On January 28, 2003, the Company reinstated plaintiff to her position as a Pharmacy Technician with the same pay benefits, and job responsibilities. (Maya Aff. ¶15).

## II. **LEGAL STANDARDS**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir.), <u>cert. denied</u>, 502 U.S. 994 (1991). In deciding a motion for summary judgment, the court

6 - FINDINGS AND RECOMMENDATION

must determine, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994)(citations omitted). The parties bear the burden of identifying the evidence that will facilitate the court's assessment. Id.

The moving party bears the initial burden of proof. See Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir.), cert. denied, 516 U.S. 987 (1995). The moving party meets this burden by identifying portions of the record on file which demonstrates the absence of any genuine issue of material fact. Id. "[T]he moving party . . . need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390, 393 (4th Cir. 1994), cert. denied, 513 U.S. 1191 (1995)(citation omitted); See City of Mt. Pleasant, Iowa v. Associated Electric Co-op, Inc., 838 F.2d 268, 273-274 (8th Cir. 1988)(it is sufficient for the movant to argue that the record does not contain an issue of fact and to identify that part of the record that supports that assertion).

In assessing whether a party has met their burden, the court must view the evidence in the light most favorable to the nonmoving party. Allen v. City of Los Angeles, 66 F.3d 1052 (9th Cir. 1995). All reasonable inferences are drawn in favor of the nonmovant. Id.

If the moving party meets their burden, the burden shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Auvil v. CBS "60 Minutes", 67

7 - FINDINGS AND RECOMMENDATION

F.3d 816 (9th Cir. 1995), cert. denied, 517 U.S. 1167 (1996). The nonmoving party cannot carry their burden by relying solely on the facts alleged in their pleadings. Leonard v. Clark, 12 F.3d 885, 888 (9th Cir. 1994). Instead, their response, by affidavits or as otherwise provided in Rule 56, must designate specific facts showing there is a genuine issue for trial. Id.

In addition to the requirements of Fed.R.Civ.P. 56(e), parties must also comply with the requirements set forth in Local Rule 56.1. Local Rule 56.1(b) provides that opposition to a motion for summary judgment must include a response to the separate concise statement that responds to each numbered paragraph of the moving party's facts by either accepting or denying each fact or articulating opposition to the moving party's contention or interpretation of the fact.

Local Rule 56.1(c) sets forth the requirements for a party's concise statement of facts, and requires a citation to particular evidence supporting a party's statement, acceptance, or the denial of a material fact. Local Rule 56.1(e) provides in part that "the court has no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."

Local Rule 56.1(f) provides that material facts set forth in a concise statement of the moving party or in response to the moving party's concise statement that are not specifically denied or otherwise controverted by a separate concise statement of the opposing party will be deemed admitted. The court is not required to search the record to determine whether any factual disputes exists, and an

8 - FINDINGS AND RECOMMENDATION

opposing party's failure to designate and reference triable facts, in light of the requirements of Fed.R.Civ.P. 56(e), Local Rule 56.1, and governing precedent may be fatal to the opposition. See Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1034 (D.C. Cir. 1988).

### III. **DISCUSSION**

Defendant moves for summary judgment on plaintiff's three remaining claims, violation of the Oregon Family Leave Act (OFLA), invasion of privacy by public disclosure of private facts, and intentional infliction of emotional distress(IIED). Defendant argues that:

1) plaintiff's invasion of privacy claim fails, because any disclosures by Ms. Boersma or Albertsons were not made to the public generally or to a large number of people, and Albertsons was conditionally privileged to make any disclosures;

2) plaintiff's IIED claim fails, because there is no evidence that Ms. Boersma or Albertsons intended to inflict emotional distress on plaintiff and their conduct did not transcend the bounds of socially acceptable conduct; and

3) plaintiff's OFLA claim fails, because Albertsons was always in compliance with the Act.

OFLA Claim

Plaintiff alleges defendant violated ORS 659A.171, which provides in part that "After returning to work after taking family leave . . . an eligible employee is entitled to be restored to the position of employment held by the employee when the leave commenced if that position still exists. An employer may require an employee to provide

9 - FINDINGS AND RECOMMENDATION

a certification from the employee's health care provider that the employee is able to return to work. ORS 659A.171 (4)(a); OAR 839-009-0270(7).

Since there are no cases interpreting Oregon's statute or regulations regarding when an employee has satisfied the certification requirement, this court will look to federal law. ORS 659A.186(2). Under federal law, if an employee fails to certify that she is fit for duty and able to perform the essential duties of employment, the employee's reinstatement rights are not triggered. <u>See</u> <u>Saarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 161 (2nd Cir. 1999).

The undisputed facts show that on January 28, 2003, defendant reinstated plaintiff to her previous position with identical pay, benefits, and responsibilities. The undisputed facts show that prior to this date, plaintiff's health care providers failed to certify that plaintiff did not constituted a treat to herself or others in performing her duties as a pharmacy technician after her attempted suicide using prescription drugs. The undisputed facts show that defendant made several efforts to obtain the proper certification from plaintiff's health care providers and that it was not until January 27, 2003 that defendant was able to obtain the proper certification. Based on theses undisputed facts, defendant was not in violation of the OFLA, and it is entitled to summary judgment on this claim.

<u>Invasion of Privacy</u>

To prevail on her claim for invasion of privacy, plaintiff must prove that: 1) the facts disclosed were private; 2) the defendant

10 - FINDINGS AND RECOMMENDATION

disclosed the facts to the public generally or to a large number of persons, and the disclosure was in the form of publicity of a highly objectionable kind. <u>Flowers v. Bank of America Nat'l Trust and Savings Assoc.</u>, 67 Or.App. 791, 797 (1984)(citations omitted).

Defendant has presented undisputed evidence that the facts regarding plaintiff's suicide attempt were not publically disclosed and were not disclosed to a large group of people by Albertsons or Albertsons' employees. The undisputed facts show that the Pharmacy Manager, Ms. Boersma only spoke with Albertsons' management and Ms. Kelter, a supervising pharmacist, regarding plaintiff's situation. This type of disclosure is insufficient to state a claim. <u>See Tollefson v. Price</u>, 247 Or. 398401 (1967). Therefore, defendant is entitled to summary judgment on this claim.

<u>Intentional Infliction of Emotional Distress (IIED)</u>

To state a claim for IIED, plaintiff must show that 1) defendant intended to inflict severe emotional distress on plaintiff; 2) defendant's acts did, in fact, cause plaintiff severe emotional distress, and 3) defendant's acts consisted of some extraordinary transgression of the bounds of socially tolerable conduct. <u>Meagher v. Lamb-Weston, Inc.</u>, 839 F.Supp. 1403, 1408 (D.Or. 1993)(citation omitted).

> Whether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances. *Lanthrope-Olson v. Dept. of Transportation*, 128 Or. App. 405, 408, 876 P.2d 345 (19994). In *Rosenthal v. Erven*, 172 Or. App. 20, 23-23, 17 P.3d 558 (2001), we described some of the factors potentially relevant to that inquiry:

11 - FINDINGS AND RECOMMENDATION

> The *Restatement (Second) of Torts* and treatises use terms such as outrageous and extreme to describe conduct actionable as IIED, but the facts of decided cases convey more than adjectives do to guide our analysis of this element. Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. . . . Other factors include whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual. . . . The setting in which the allegedly outrageous conduct occurs – for example, in a public venue or within the employment context - - also can bear on the degree of offensiveness of the conduct. . . .
>
> The relationship between the parties has particular bearing on potential characterization of the conduct as extreme and outrageous. That is so because a defendant's position or role *vis-a-vis* a plaintiff may be one that imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's length encounters among strangers. . . .

Delaney v. Clifton, 180 Or. App. 119, 130-131, review denied, 334 Or. 631 (2002).

Plaintiff has not presented any evidence that Ms. Boersma or Albertsons intended to cause plaintiff severe emotional distress by disclosing the facts of her suicide attempt. In addition, this type of conduct is not sufficiently extreme or outrageous to be actionable. See Watte v. Maeyens, 112 Or.App. 234, 238 (1992). Therefore, defendant is entitled to summary judgment on this claim.

## IV. **RECOMMENDATION**

Based on the forgoing, it is recommended that defendants' motion for summary judgment (#53) be granted and a judgment be entered dismissing this case.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. Plaintiff failed to failed a timely response to defendant's motion for summary judgment. Any late response filed by plaintiff will be treated as an objection to this Findings and Recommendation.

*The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the objections*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this \_\_\_23_____ day of August, 2005.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE